HARTMANN VACKINER, APPELLANT, v. MUTUAL OF OMAHA, INSURANCE COMPANY, APPELLEE.

137 N. W. 2d 859

Filed November 12, 1965. No. 35960.

Homer E. Hurt, Jr., for appellant.

Sidner, Gunderson, Svoboda & Schilke, for appellee.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

SMITH, J.

Defendant obtained a summary judgment on a claim by plaintiff for hospital and surgical benefits under an insurance contract between the parties. On appeal we review the bill of exceptions with particular reference to contentions that plaintiff fraudulently represented his good health in the written application for the insurance and that the representations were material to the risk.

The application exhibits negative answers to these questions:

"Have you * * * ever had, or been told you had, or received advice or treatment for: * * * (a) * * * heart, vein or artery trouble * * *? * * * (c) * * * kidney or bladder trouble, prostate trouble * * *? (d) Mental or nervous trouble * * *? * * *

"Have you * * * ever had, or been told you had, or

received advice or treatment for: (a) any physical conditions or injuries not mentioned above, or (b) any symptoms of ill health? * * *"

Plaintiff, 71 years of age, signed the application on March 18, 1963, below this printed statement:

"I represent that my above answers and statements are true and complete to the best of my knowledge and belief * * *."

When the policy with the attached application was delivered, plaintiff noticed his negative answers. He made this claim on July 30, 1963, as a result of a prostate operation the same month. There too he answered negatively a question concerning medical or surgical advice for any other condition during the preceding 5 years. The English language was an obstacle, for he read with some difficulty and wrote with more.

From investigation of the claim defendant discovered an adverse medical history. In January 1958, plaintiff was hospitalized 8 days for angina pectoris secondary to myocardial ischemia. An electrocardiogram showed a right bundle branch block, which was noted again in 1963. Occasional treatment was being administered as late as September 1958.

Early in 1958 plaintiff received electric shock treatments for a disorder defined as "involitional psychiatric recation," and from June to September he was using medications prescribed for it. The insurance policy excludes benefits for losses from mental disorders.

Histories elicited from plaintiff in June 1963, disclosed a slowness of his urinary stream. Although some diminution had been occurring for 2 years, it progressed only during the preceding 3 or 4 months. A urologist reported that the exact cause had not been knowledgeable by the patient, and plaintiff's testimony is not conclusive for present purposes.

In his reply to defendant's answer plaintiff pleaded his health as follows:

"Plaintiff * * * admits that he underwent certain tests

and examinations relative to his general health; denies knowledge of any heart condition; admits some intermittent urinary difficulties in the form of slowing or diminution of the stream; admits treatment * * * for a transitory nervous condition; admits that he has consulted doctors on occasion during the years for minor conditions and for periodic health examinations but alleges that this has been less than average for persons of comparable age."

On August 29, 1963, defendant notified plaintiff of cancellation and tendered the amount of the premium. In subsequent affidavits the writing agent and his supervisor stated that if the true history, or a part of it, had been known, the application would not have been accepted because the underwriting program prohibited issuance of the policy when the health history was adverse.

An untrue representation made by an insured in response to a question in an application calling for opinion, judgment, or belief will not avoid a policy issued on the application, unless the misrepresentation was knowingly made with intent to deceive. Muhlbach v. Illinois Bankers Life Assn., 108 Neb. 146, 187 N. W. 787. This rule is controlling here. See Dezsi v. Mutual Benefit Health & Accident Assn., 255 Iowa 1027, 125 N. W. 2d 219.

Summary judgment procedure is effective only to pierce pleadings and show conclusively that the controlling facts are otherwise. Nonexistence of a genuine issue of material fact is not established merely by evidence which would be insufficient to carry the issue to a jury, because the record may constitute only part of the evidence available at a trial on the merits. Berg v. Rasmuss, 176 Neb. 340, 125 N. W. 2d 905.

Defendant failed to prove that in a jury trial plaintiff would be unable to avoid a determination, as a matter of law, that nondisclosure of his prostate condition had been fraudulent. Materiality of the other representations to the risk remains for consideration.

. In an action on a policy, an insurance company cannot prevail on a defense of fraudulent representations in the application by the insured, unless the representations were material to the risk. Muhlbach v. Illinois Bankers Life Assn., *supra*. Assuming without deciding that nondisclosure of conditions other than the urinary one was fraudulent, we think that their materiality to the risk as a matter of law in a trial on the merits is unproved. The medical diagnoses are not instructive enough to supply deficiencies in the affidavits of the two agents. The men should stand cross-examination in view of their general opinions and their nonparticipation in the formulation of the underwriting program.

The motion for summary judgment should not have been sustained. We reverse the judgment and remand the cause for further proceedings consistent with this opinion.

REVERSED AND REMANDED.