ELLA BETH STOLTE, APPELLANT, v. HERBERT A.
BLACKSTONE, APPELLEE.

328 N.W.2d 462

Filed December 17, 1982. No. 81-633.

Wright, Simmons & Selzer, and P. J. Heaton, Jr., for appellant.

Richard M. Van Steenberg of Van Steenberg, Brower,. Chaloupka, Mullin & Holyoke, and Thomas J. Shomaker of Sodoro, Daly & Sodoro, for appellee.

KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, HASTINGS, and CAPORALE, JJ.

CAPORALE, J.

This appeal challenges the summary judgment granted by the trial court to defendant-appellee, Dr. Herbert A. Blackstone, which dismissed the petition of plaintiff-appellant, Ella Beth Stolte. Stolte's petition sought money damages for Blackstone's alleged fraud and conspiracy to defraud Stolte and others in a will contest case. Among other assignments, Stolte contends the trial court erred in ruling that no civil action for damages lies for giving or conspiring to give false testimony. We affirm the judgment of the trial court.

Clair V. Gilbert felt deeply the September 1969 death of his wife. In July 1970 he was committed to a state hospital, but was discharged approximately 1 month later. Dr. Blackstone was Mr. Gilbert's attending physician at that time, had participated in the commitment, and had treated him after the release.

Following the death of his wife, Mr. Gilbert, having no children, became reliant upon one of his nieces, Millie Gilbert. The record further indicates that from March 1970 to May 1973 Mr. Gilbert made gifts to Millie Gilbert of money to the extent of about one-quarter of a million dollars. On May 7, 1971, he executed a will leaving his remaining estate of a

little over one-half of a million dollars to Millie Gilbert. Mr. Gilbert died on January 31, 1975.

An action was brought to contest Millie Gilbert's claim to Clair V. Gilbert's estate, as well as the validity of the inter vivos gifts to her. The action sought to invalidate the will and to recover the gifts made, claiming Millie Gilbert unduly influenced the decedent and that he was mentally incompetent. The suit was settled in July 1977, immediately preceding trial. The parties in settlement compromised the amount of moneys they would respectively take.

Dr. Blackstone testified on March 12, 1977, in a deposition given in conjunction with that suit, that Clair V. Gilbert was competent, in his professional opinion, to have made both the gifts and the will. However, on May 16, 1978, the heirs herein discovered, during a consultation with the Internal Revenue Service in regard to other matters, a handwritten memorandum from Dr. Blackstone to the effect that Mr. Gilbert was incompetent. This memorandum was dated May 18, 1972. In addition to describing Clair V. Gilbert's condition in technical medical terms, it certified that he was not then in possession of his mental faculties and had not been for some time, and, further, that he had not managed his own affairs for the preceding 12- to 18-month period.

The pivotal issue is whether the trial court was correct in ruling that the March 12, 1977, testimony of Dr. Blackstone, if indeed it was false, would necessarily be immune from civil liability. If such immunity does exist, then there could be no genuine issue as to any material fact and Dr. Blackstone was entitled to judgment as a matter of law. The absence of a genuine issue as to any material fact and entitlement to judgment as a matter of law are prerequisites to a summary judgment. Neb. Rev. Stat. § 25-1332 (Reissue 1979); *Gitschel v. Sauer,* 212 Neb.

454, 323 N.W.2d 93 (1982); *Manzer v. Pentico,* 209 Neb. 364, 307 N.W.2d 812 (1981).

It appears that we have not heretofore addressed the question of whether the immunity generally granted witnesses should extend to giving or conspiring to give false testimony. However, a variety of reasons have been stated by other courts in support of the majority rule which refuses to recognize a common-law civil cause of action for giving false testimony. Among the principal reasons are that witnesses need to be protected against the fear of subsequent actions based on their testimony; that a final judgment or other final disposition cannot be collaterally attacked; and that to permit the issues to which the allegedly false testimony was addressed to be retried would lead to endless litigation. The general rule is stated to extend to conspiracy actions on the ground that an act which is not itself actionable cannot be the object of an actionable conspiracy. An exception is frequently recognized when the total objective of the conspiracy is greater than the determined issue and the determined issue is but a step or part of the larger total conspiracy or fraudulent scheme. See, Annot., 31 A.L.R.3d 1423 (1970); Annot., 54 A.L.R.2d 1298 (1957).

Plaintiff alleges a conspiracy. Among the items of evidence is the affidavit of Dr. Blackstone in which he categorically denies any scheme or conspiracy with Millie Gilbert or anyone else to assist her or them in gaining an advantage over plaintiff-appellant or others. This statement stands uncontradicted. Although the purpose of a motion for summary judgment is to pierce the allegations of the pleadings and to show conclusively that the controlling facts are otherwise than as alleged, *Gerdes v. Spetman,* 197 Neb. 406, 249 N.W.2d 210 (1977), and *Prairie View Tel. Co. v. County of Cherry,* 179 Neb. 382, 138 N.W.2d 468 (1965), summary judgment is not appropriate, even where there are no conflicting evidentiary facts, if the ultimate inferences to be drawn

from those facts are not clear. *Metro. Tech. Community College v. South Omaha Industrial Park,* 207 Neb. 472, 299 N.W.2d 535 (1980). For the purpose of this opinion we assume arguendo that an inference of a conspiracy can be drawn from the circumstances, notwithstanding Dr. Blackstone's denial of such.

15A C.J.S. *Conspiracy* § 16 at 648 (1967) speaks to the issue as follows: "Since, as a general rule, in the absence of statute, no action lies to recover damages caused by perjury, false swearing, subornation of perjury, or an attempt to suborn, as discussed in Perjury § 92, an action for damages for conspiracy to commit perjury and the giving of false testimony or for subornation or attempted subornation of perjury, cannot ordinarily be maintained. It has been held, however, that where the giving of false testimony is but a part of a plan or scheme to defraud a person, an action for the conspiracy will lie. . . ." The same view is taken in 16 Am. Jur. 2d *Conspiracy* § 63 at 275-76 (1979): "The general rule is that no civil action for damages lies for false testimony, or for subornation of false testimony, or for conspiracy to give or to procure false testimony. Several reasons have been stated by the courts for refusing to recognize a cause of action for conspiracy to give false testimony: testimony of witnesses is privileged to protect them against the fear of subsequent actions based on their testimony; an act which is not in itself actionable cannot be the subject of an actionable conspiracy; and the final judgment in the action in which the false testimony has been given cannot be collaterally attacked.

"An action for conspiracy to procure false testimony can be brought where all the parties to the conspiracy action were strangers to the action or proceeding in which the testimony was used. Also, some cases hold or recognize that an action may be brought where the alleged perjury is merely a step

in the accomplishment of a larger, actionable conspiracy.''

*Eikelberger v. Tolotti,* 96 Nev. 525, 611 P.2d 1086 (1980), held that plaintiffs had no cause of action for civil conspiracy against an attorney who submitted a partially false affidavit, on the basis that perjury is an offense against the public only and is subject only to the criminal law.

In *W. G. Platts, Inc. v. Platts,* 73 Wash. 2d 434, 438 P.2d 867 (1968), plaintiff claimed that defendants testified differently in depositions than they had indicated they would in a criminal action and a civil action growing out of it wherein both actions were defeated. Defendants were then sued for the damages plaintiff claimed he suffered. In affirming the trial court's granting of the summary judgment, the Washington Supreme Court said at 440, 438 P.2d at 871: "Perjury is, of course, a public offense and punishable in criminal proceedings, but from earliest times the giving of false testimony has not been treated as a wrong actionable in civil proceedings. This same immunity applies to statements made preliminary to testifying.''

In *Ragsdale v. Watson,* 201 F. Supp. 495 (W.D. Ark. 1962), plaintiff alleged that he had sustained an injury while acting within the scope of his employment but was defeated in his efforts to obtain workmen's compensation benefits by a conspiracy between the insurance adjuster and two physicians to defraud him. Plaintiff claimed the adjuster had him examined by the physicians and subsequently secured from them false, incomplete and misleading reports and evidence as to his physical condition which resulted in denial of his claim. The motion of the several defendants to dismiss for failure to state a claim was sustained and the complaint dismissed. In doing so the court stated at 502: "Since the civil conspiracy to defraud alleged in this action is based on the overt act of perjured testimony, the next question is whether the perjured testimony itself on

the part of an individual is subject to a civil suit. The rule as to civil liability for perjury is stated as follows in 41 Am.Jur., Perjury, beginning at page 44:

" 'Sec. 81. Generally.—Ordinarily, aside from defamation and malicious prosecution, the courts will not recognize any injury from false testimony upon which a civil action for damages can be maintained. Thus, it has been held that false testimony in a criminal action which results in a conviction of the plaintiff does not furnish the basis of a civil suit to recover damages, and that no action for damages lies for false testimony in a civil suit whereby the plaintiff fails to recover a judgment, or a judgment is rendered against him. * * * In accordance with these principles, therefore, no action lies for false testimony by reason of which the plaintiff recovers a smaller amount of damages than the amount to which he is entitled.' "

*Williams v. McClellan,* 59 Misc. 620, 111 N.Y.S. 229 (1908), is somewhat similar to the present case. Plaintiff therein claimed that, in reliance upon certain statements made to him by the defendants, and upon their agreements to testify to certain facts, he had brought an action to establish a will and to set aside certain allegedly fraudulent deeds. He further claimed that, pursuant to a conspiracy between the defendants, they had withheld that testimony and had falsely testified to the contrary, as a result of which judgment was entered against plaintiff. A demurrer to the complaint was sustained, the court observing that an action will not lie to recover damages for perjury alleged to have been committed in a former case in which the plaintiff might have been interested. However, *Newin Corp. v. Hartford Acc.,* 37 N.Y.2d 211, 333 N.E.2d 163, 371 N.Y.S.2d 884 (1975), held a cause existed against insurers to recover on bonds issued to persons not involved in the suit on another bond wherein the perjury occurred. *Newin* rested on the rationale that the conspiracy in-

volved a fraudulent scheme beyond the issues involved in the proceeding at which the perjury took place.

Although the Wisconsin Supreme Court in *Radue v. Dill,* 74 Wis. 2d 239, 246 N.W.2d 507 (1976), held that the allegation that defendants conspired to injure plaintiff's reputation and professional standing by giving false information stated a cause of action under its statute prohibiting conspiracies to injure another's reputation or profession by any means, the allegation did not state a cause of action based on perjury. In so concluding, the court reviewed the authorities as follows at 241-43, 246 N.W.2d at 509-10:
"The defendants' contention in support of the demurrer is simply that a conspiracy to give or to procure the giving of false testimony is not civilly actionable. The basis for this argument is the long established rule that statements made during investigatory proceedings and judicial proceedings are absolutely privileged, and therefore acts of perjury may not form the basis of a civil action for damages. *Bergman v. Hupy* (1974), 64 Wis.2d 747, 221 N.W.2d 898; *Schultz v. Strauss* (1906), 127 Wis. 325, 106 N.W. 1066. Such statements are privileged to promote the policy of encouraging witnesses to speak freely without fear of civil liability, and as a result perjury is an offense against the public only and subject only to the criminal law. The defendants argue that since overt acts pursuant to the conspiracy are necessary, there can be no civil action where, as in this case, the only overt acts are privileged acts of perjury. They apparently reason that an act which constitutes no ground of an action when done by one alone cannot be made the ground of such action by alleging it to have been done by and through a conspiracy of several.

"Although this court has never considered the question, the courts of other jurisdictions have uniformly held that a plaintiff may not, by claiming conspiracy, avoid the doctrine that there is no civil

action for perjury. *Platts v. Platts,* (1968), 73 Wash.2d 434, 438 P.2d 867; Annot., *Actionability of Conspiracy to Give or to Procure False Testimony or Other Evidence,* 31 A.L.R.3d 1423 (1970). These decisions reveal two basic grounds upon which the courts have relied to void this type of action. The first ground is, of course, that privileged acts of perjury may not form the basis of any civil action. The second ground relied upon is that there may be no action for civil conspiracy unless the overt acts causing damage are actionable themselves. *See Platts v. Platts, supra,* at p. 439.

"The plaintiff, however, bases his claim for relief upon two arguments, which, he contends, distinguish this case from those of other jurisdictions. First, plaintiff claims that an exception to the general rule against civil actions for conspiracy to commit perjury exists and applies here where the perjury is merely a step in the accomplishment of a larger plan. Second, plaintiff claims that sec. 134.01, Stats., creates a civil cause of action for conspiracy alone.

"An action for conspiracy will lie where the perjury is merely a step in the accomplishment of a larger plan. *Verplanck v. Van Buren* (1879), 76 N.Y. 247. The instant case, however, does not fall within this rule. According to the complaint, the only acts complained of are privileged acts of giving false information, and while the plaintiff contends that these acts are only a part of the entire transaction, there is nothing alleged to show any other parts. These acts of perjury appear to be the entire plan. In each of the cases to which plaintiff points in support of his contention, there were either other acts in furtherance of the conspiracy besides the acts of perjury, or the action involved was one based not solely upon conspiracy but upon fraud and deceit. For example, in *Verplanck v. Van Buren, supra,* the defendants had not only perjured themselves but, as the court pointed out, more importantly had pre-

pared fictious [sic] contracts and made false entries into the books of account. In *Frist v. Gallant* (W.D.S.C. 1965), 240 F. Supp. 827, the court held that the plaintiff's action charging the defendants with conspiracy to defraud could be based upon perjured testimony, provided all the necessary elements of fraud and deceit were proved. In the case now before this court the claim is one based solely upon an executed conspiracy, the only overt acts of which are the giving of false testimony."

Application of the general rule is not, however, universal. For example, *Morgan v. Graham,* 228 F.2d 625 (10th Cir. 1956), held that the general rule did not apply to the false and fraudulent acts of an insurer and its tort-feasor in making false statements that the tort-feasor was not covered by insurance.

Nonetheless, since it is the damage resulting from the perjury which a civil action seeks to redress, we are of the opinion the better reasoning requires that the perjury be but a step or part of a larger total conspiracy or fraudulent scheme in order to create an exception to the rule that there is no civil liability for giving or conspiring to give false testimony. Here, the only complaint made is of the alleged false testimony; the consequence sought to be redressed flows solely and only from the defendant's deposition testimony.

In the absence of a statute imposing civil liability, we believe the better policy to be to grant witnesses immunity from civil liability for damages resulting from statements made by them as such, and to leave the matter of liability for perjury to the criminal law. See Neb. Rev. Stat. § 28-915 (Reissue 1979). In view of this determination, consideration of appellant's other arguments of error is not necessary.

AFFIRMED.

WHITE, J., participating on briefs.